UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | Case No. |
| | : | 3:21-CR-220 (VAB) |
| v. | : | |
| | : | |
| MAHESH PATEL, ROBERT HARVEY, HARPREET WASAN, STEVEN HOUGHTALING, TOM EDWARDS, and GARY PRUS, | : : : : : | |
| | : | February 23, 2023 |
| *Defendants*. | : : | |

### DEFENDANT ROBERT HARVEY AND DEFENDANT HARPREET WASAN'S JOINT MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THEIR COMPENSATION

Defendants Robert Harvey and Harpreet Wasan respectfully submit this motion *in limine* to preclude the government from offering evidence at trial relating to their respective compensation. Based on a review of the government's exhibit list, which contains documents that relate to Harvey's and Wasan's compensation, we expect the government to offer evidence purportedly to show that they each had a pecuniary motive to join the charged conspiracy. Because there is no factual predicate to connect either Harvey's or Wasan's personal compensation with the alleged conspiracy, however, such evidence should be excluded as irrelevant, Fed. R. Evid. 401, and highly likely to cause unfair prejudice. Fed. R. Evid. 403.

### ARGUMENT

The Indictment charges a *per se* violation of Section 1 of the Sherman Act based on an alleged agreement (a) among an employee at an aerospace engine design, manufacture and service company Pratt & Whitney ("Pratt," referred to in the Indictment as "Company A") and employees of several of its suppliers of outsourced engineering services (referred to in the

Indictment as "Companies B-F"), all of which are privately held companies, not to solicit for hire or hire engineers and skilled labor employees working on projects for Pratt and (b) that Pratt would not hire such employees from QuEST Global ("QuEST," referred to in the Indictment as "Company B") until they had worked for two years with QuEST and at certain times would not hire such employees regardless of their tenure with QuEST. Ind. ¶¶19, 23-24. The Indictment alleges that the goal of the alleged conspiracy was "prevent[ing] wages and labor costs from rising," which "otherwise financially benefited co-conspirators." Ind. ¶27. The Indictment does not allege any connection between the alleged no-poach agreement and the individual compensation earned by Defendants or the "financial benefit[s]" to coconspirators.

The government's proposed exhibit list includes three documents concerning Defendant Harvey's compensation.



Ex. A.

Ex. B.

Ex. C.[1]

The government's proposed exhibit list includes four similar exhibits pertaining to Wasan:



Ex. D.

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It and the other proposed government exhibits discussed herein have been filed under seal, with unredacted copies provided to the Court.


. Ex. E.

███████ Ex. F.

███████ Ex. G.

Under Rules 401 and 403 of the Federal Rules of Evidence, these proposed exhibits should be excluded as irrelevant and, even if marginally relevant, because they are likely to engender unfair prejudice; for the same reasons, any government argument about Harvey's and Wasan's compensation should be precluded.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 401. "Relevancy is a threshold inquiry." *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Here, the government cannot satisfy the relevance threshold absent evidence linking Defendants' compensation to the agreement alleged in the Indictment. *See United States v. Ferguson*, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) (excluding evidence of salary and bonuses because they were not linked to scheme to manipulate company financial statements to maintain its stock price and admitting only that component of compensation with a direct causal link to scheme); *see also* 6/16/2016 Hr'g Tr. at 42:7-10, *United States v. Litvak*, No. 3:13-CR-19 (D. Conn.), ECF No. 429 (Judge Hall: "[T]here's no way you are introducing his W-2 unless you have drawn some *connection* between the information on the W-2 and the scheme at issue in this case." (emphasis added)). Such evidence is absent here.

3

The evidence establishes no such linkage between the alleged conspiracy and these Defendants' compensation, and there is none. None of the reports of interview, grand jury transcripts or proposed exhibits on the government's exhibit list provide any information concerning the determination of Harvey's or Wasan's compensation. No individual identified on the government's witness list is competent to explain the structure of either Harvey's or Wasan's compensation or the calculation of its components, much less that their compensation was affected or would be expected to be affected by the alleged agreement.

In his position as Vice President, Strategic Accounts – and, later, President, Strategic Accounts – Harvey had responsibilities for developing QuEST's business with numerous customers around the world. Pratt was only one of multiple substantial aerospace customers within the scope of his responsibility. He also had responsibilities outside the sales function including training, supervisory management, and QuEST budgeting. ███████████████████████████████████████████████████████████████████████ Accordingly, no non-speculative basis would support an evidentiary linkage between the alleged conspiracy and Harvey's compensation.

Beginning in early 2015, Mr. Wasan was Vice President/Strategic Client Partner of QuEST, which was likewise a management role for which there is no non-speculative evidentiary linkage between the alleged conspiracy and Wasan's compensation.

Thus, the proposed compensation-related exhibits are not probative of a personal incentive on either Defendant's part to join the alleged conspiracy and should be excluded under Rule 401. *See* 4/25/2017 Conf. Tr. 20:5-13, *United States v. Shapiro et al.*, No. 15-cr-155 (RNC)

4

(D. Conn.), ECF No. 372 (Judge Chatigny excluding evidence of defendants' compensation in a securities and wire fraud case because "[t]he total compensation numbers themselves don't tell us to what extent the defendants' compensation was based on profits derived from fraudulent activities . . . [and] [t]here is no indication that the government will offer evidence of what the defendants' total compensation would have been without the fraudulent trades"). Moreover, given the breadth of Harvey's responsibilities and factors that influenced his personal compensation, even if the government were able to adduce evidence that the alleged agreement was motivated by a QuEST *business* motive to "prevent wages and labor costs from rising," it would not be able to lay a sufficient foundation to admit evidence of Harvey's *individual* compensation.

Furthermore, under Rule 403, even if the proposed exhibits contained minimal probative value (which they do not), the exhibits should be excluded because their admission would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. "Unfair prejudice" arises from evidence that may "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Nachamie*, 101 F. Supp. 2d 134, 141 (S.D.N.Y. 2000) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). In this case, where the government has placed the "wages and labor costs" of rank-and-file engineers and other skilled laborers in issue, the dangers in permitting the government to admit the subject exhibits would be pronounced.

Harvey, at the time he arrived at QuEST in 2010, joined the company's leadership team after having already worked for decades in management and engineering roles with multinational, sophisticated manufacturing companies. Likewise, when Wasan joined QuEST in 2015, he was also a management employee with over a decade of experience in the industry.

5

The alleged conspiracy charges a no-poach agreement focused on engineers and other skilled labor employees, all or substantially all of whom are in much earlier phases of their respective careers, including many who were new or recent college or technical program graduates. The specific service offering that QuEST provided to Pratt was termed by Pratt "low-cost domestic" service and many QuEST employees were inexperienced, recently minted engineers or other skilled labor. These employees earned considerably less than executives such as Harvey and Wasan, who had already worked for lengthy periods before they joined QuEST. Harvey for example was in the fourth decade of his career. Any effort of the government to point to Harvey's or Wasan's compensation, which would contrast starkly with that of the group of QuEST's relatively inexperienced engineers and skilled labor, would encourage emotional, class-based animus and thus interfere with the evidence-based judgments the law asks the jury to render – a particularly high risk here because the Indictment alleges that the agreement was motivated by the business incentive of "prevent[ing] wages and labor costs from rising." Ind. ¶27.

Accordingly, the proposed compensation-related exhibits and any subsequently added to the government's exhibit list should be excluded. *See* 4/25/2017 Conf. Tr. 20:19-21:3, *United States v. Shapiro et al.*, No. 15-cr-155 (RNC) (D. Conn.), ECF No. 372 (Judge Chatigny excluding evidence of compensation of defendant Wall Street traders because "the probative value of the actual compensation numbers with regard to motive on the record in front of me right now is substantially outweighed by the danger of unfair prejudice" from "concerns about inequality in wealth").

For substantially the same reasons, the government should be precluded from mentioning Harvey's or Wasan's compensation in opening statements or drawing inflammatory contrasts at

6

trial between comparatively well-compensated executives and less well-compensated engineers and other skilled labor. *United States v. Stahl*, 616 F.2d 30, 31-33 (2d Cir. 1980) (reversing defendant's conviction where prosecutor's trial strategy included "a persistent appeal to class prejudice" and that "[b]ecause such appeals are improper and have no place in the court room"); *United States v. Cassese*, 290 F.Supp.2d 443, 457 (S.D.N.Y. 2003), *aff'd*, 428 F.3d 92 (2d Cir. 2005) (granting a new trial where evidence and argument regarding defendant's "wealth, salary, and stock holdings" proved to be irrelevant and highly prejudicial because it "played into a bias against people of wealth").

## CONCLUSION

For the above-stated reasons, Defendants Harvey and Wasan respectfully submit that their motion *in limine* to preclude the government from introducing evidence concerning the compensation of Harvey or Wasan or arguing to the jury concerning the same, should be granted.

Respectfully submitted,

*/s/ Guy Petrillo*
GUY PETRILLO (pro hac vice)
LEONID SANDLAR (pro hac vice)
CAELYN STEPHENS (pro hac vice)
Petrillo Klein & Boxer LLP
655 Third Avenue 22nd Floor
New York, NY 10017
T: (212) 370-0330
Email: gpetrillo@pkbllp.com

PAUL MCCONNELL (ct29062)
71 Elm Street, Suite 20
New Canaan, CT 066840
T: (203) 344-7007
F: (203) 344-7009
Email: paul.mcconnell@familylaw.com

*Counsel for Robert Harvey*

*/s/ Marc A. Weinstein*
MARC A. WEINSTEIN (pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
T: (212) 837-6460
F: (212) 299-6460
Email: marc.weinstein@hugheshubbard.com

CRAIG A. RAABE (ct04116)
Izard, Kindall & Raabe LLP
29 South Main Street,
West Hartford, CT 06107
T: (860) 513-2939
F: (860) 493-6290
Email: craabe@ikrlaw.com

8

## CERTIFICATION OF SERVICE

I hereby certify that on February 23, 2023, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
February 23, 2023

    /s/ Guy Petrillo
Guy Petrillo (pro hac vice)
Petrillo Klein & Boxer LLP
655 Third Avenue 22nd Floor
New York, NY 10017
T: (212) 370-0330
Email: gpetrillo@pkbllp.com

EXHIBIT A

(GX-1363)

Filed Under Seal

EXHIBIT B

(GX-1365)

Filed Under Seal

EXHIBIT C
(GX-1338)
(excerpt)
Filed Under Seal

EXHIBIT D

(GX-1360)

Filed Under Seal

EXHIBIT E
(GX-1361)
Filed Under Seal

EXHIBIT F
(GX-1362)
Filed Under Seal

EXHIBIT G

(GX-1364)

Filed Under Seal